Case No. 6:16-cv-00386-MC

Bankr. No. 12-64782-fra13 (Bankr. D. Or.)
Adv. No. 14-06218-fra

_____

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON

_____

In re JONATHON ELDON HUNSAKER and
CHERYL LYNN HUNSAKER,
Debtors.

_____

JONATHON ELDON HUNSAKER; CHERYL LYNN HUNSAKER
Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA,
Defendant-Appellant,

_____

ON APPEAL FROM THE JUDGMENT OF UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF OREGON

_____

# OPENING BRIEF OF APPELLANT ON REMAND

_____

BORIS KUKSO
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-353-1857 (v)
202-307-0054 (f)
boris.kukso@usdoj.gov
*Attorney for Appellant*

BILLY J. WILLIAMS
United States Attorney
District of Oregon

*Of Counsel*

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES ON REMAND ................................................................1

STANDARD OF REVIEW ..................................................................................1

STATEMENT OF THE CASE..............................................................................1

    A.    Proceedings below..............................................................................1

    B.    Mrs. Hunsaker's alleged harm ..................................................4

    C.    Mr. Hunsaker's alleged harm ...................................................5

    D.    The ruling below .........................................................................6

    E.    This court's ruling and the subsequent appeal ..........................8

SUMMARY OF ARGUMENT ON REMAND .........................................................8

ARGUMENT ..................................................................................................11

    A.    *Dawson* was wrongly decided..................................................11

    B.    The Bankruptcy Court incorrectly held that the circumstances make it obvious that a reasonable person would suffer significant harm. ........................12

    C.    The evidence presented at trial does not support an award of damages for emotional distress. ....................................................................19

CONCLUSION ...............................................................................................25

## STATEMENT OF ISSUES ON REMAND

1.      Whether the Court erred in concluding that the circumstances surrounding the automatic stay violations would obviously cause a reasonable person to suffer significant emotional harm, and, if so, whether the Court erred in awarding damages to Mr. and Mrs. Hunsaker.

2.      Whether the evidence supported an award of damages for emotional distress to Mr. and Mrs. Hunsaker.

## STANDARD OF REVIEW

The Court reviews conclusions of law *de novo* and findings of fact for clear error. *Miller v. United States*, 363 F.3d 999, 1003-1004 (9th Cir. 2004). Questions of statutory interpretation are reviewed *de novo*, *see, e.g.*, *Beeman v. TDI Managed Care Servs., Inc.*, 449 F.3d 1035, 1038 (9th Cir. 2006). The Court reviews for an abuse of discretion the bankruptcy court's decision whether to award damages. *In re Snowden*, 769 F.3d 651, 657 (9th Cir. 2014).

## STATEMENT OF THE CASE

### A. Proceedings below

Mr. and Mrs. Hunsaker filed for Chapter 13 bankruptcy on November 5, 2012 due to a dispute they had with the county regarding a parcel of property that

1

they owned. (App. 167.)[1] The dispute lasted for approximately four years. Id. While Mr. Hunsaker could not remember exactly when the dispute ended, he believed it was not resolved until around November 2014. (App. 190-91.) Mr. Hunsaker described the land dispute as a "pain in the neck," "stressful," and "the main focus in [his] life." App. 66-67. Mrs. Hunsaker also found the land dispute and Plaintiffs' finances to be stressful. App. 208.

While Mr. and Mrs. Hunsaker's bankruptcy was pending, the Internal Revenue Service ("IRS") sent notices of intent to levy to the Hunsakers on December 2, 2013, February 10, 2014, September 1, 2014, and December 8, 2014 (together "the Notices"). (App. 253.) The IRS did not actually levy on Mr. Hunsaker's social security benefits or Mr. and Mrs. Hunsaker's state tax refund (or any other rights to property). (App. 74.)

Mr. and Mrs. Hunsaker initiated this adversary proceeding on December 5, 2014, alleging that the IRS willfully violated the automatic stay imposed by 11 U.S.C. § 362 by sending the Notices. (App. 3-6.) Plaintiffs claimed that as a result of the receipt of the Notices, Mr. and Mrs. Hunsaker suffered "actual damages in the form of time spent, attorney fees, emotional distress, anger, anxiety, worry, frustration, among other negative emotions." (App. 6.) Plaintiffs sought

---

[1] "App." references are to the appendix filed as ECF No 13-1 through 13-13.

2

compensatory damages for emotional distress, punitive damages, and costs and reasonable attorney's fees. (*Id.*)

The United States moved for summary judgment. (App. 14-17.) The United States never alleged that the Notices did not violate the automatic stay, but claimed that sovereign immunity had not been waived for an award of either punitive damages or damages for emotional distress. (*Id.*; App. 18-40.) Additionally, the United States alleged that even assuming sovereign immunity had been waived, Mr. and Mrs. Hunsaker could not meet their burden to establish that they are entitled to an award for emotional-distress damages. (*Id.*) The Bankruptcy Court held that the United States had not waived sovereign immunity for punitive damages, but denied the United States summary judgment on the emotional-distress damages claim. (*See* App. 144; 255 n.3.)

The matter was tried on January 6, 2016. Counsel for Mr. and Mrs. Hunsaker clarified that his clients were not seeking damages for any economic injuries in this adversary proceeding, but rather sought damages purely for emotional distress. (App.162-63.) Mr. and Mrs. Hunsaker each testified as to their own and each other's damages. (App. 169-217.) They did not introduce any medical records or provide any corroborating evidence as to their damages other than their own testimony.

### B. Mrs. Hunsaker's alleged harm

Mrs. Hunsaker has suffered from migraine headaches for years, beginning prior to filing for bankruptcy. (App. 209.)  Mr. and Mrs. Hunsaker claim that Mrs. Hunsaker suffered from increased migraine headaches as a result of receiving one or more of the Notices, although they are unsure which of the four letters initially triggered this reaction. (App. 175, 177, 199-200, 203-204.) Specifically, after receiving a Notice, Mrs. Hunsaker would "get[] stressy," (App. 175,) and "call[] her mother and stuff and … her neck [would] get[] stiff, [and] she [would] get[] a headache." (App. 176, *see also* App. 184.) Mrs. Hunsaker also testified that she was "emotionally upset" as a result of the Notices. (App. 199.)

Mrs. Hunsaker has been prescribed migraine medication for many years, which she only takes if she has a migraine and only if over-the-counter medication, like Advil, does not work to stop the headache. (App. 209-10.) When Mrs. Hunsaker gets a migraine, it could last for "a day or two" if her medication does not stop it. (App. 184.) Mrs. Hunsaker testified that "usually" her medicine works to stop her headaches. (App. 199-200.) With medication, Mrs. Hunsaker was able to "keep carrying on" with her normal life. (App. 200.)

There was no evidence that Mrs. Hunsaker sought additional medical care due to the Notices. However, if Mrs. Hunsaker has longer, more frequent, or more intense migraine headaches, it would lead to taking more medication. (App. 209-

4

10.) Mrs. Hunsaker agreed that the best record of when she would get migraines would be her prescription records. (App. 210.) Mrs. Hunsaker's prescription records establish that she refilled her migraine medication less frequently during the time period that the IRS sent the Notices than either before or after the Notices were sent.[2] (App. 134-36, App. 211-13.) Mrs. Hunsaker also used fewer hours of sick leave and vacation time in 2014 (the year that three of the four Notices were received) than she did in previous years. (App. 137, 214-15.) Thus, it follows that either Mrs. Hunsaker had fewer migraines during this time, or she was able to stop the on-set of the migraine by taking over-the-counter medication. Furthermore, to the extent that Mrs. Hunsaker did have increased migraines during this time period, the bankruptcy process in general may have been a contributing factor. (App. 193.)

### C. Mr. Hunsaker's alleged harm

What bothered Mr. Hunsaker most about the Notices was the fact that his wife would "get all stressy and have a migraine headache." (App. 177-78.) Mr. Hunsaker testified that the Notices were "a lot stressier" than the bankruptcy process in general. (App. 185.) Mrs. Hunsaker believed that her husband was

_____

[2] For example, Mrs. Hunsaker waited from January 2, 2014 until July 28, 2014—a period of 207 days—to refill her migraine medication, even though one of the Notices was received during that period. Similarly, Mrs. Hunsaker waited from July 28, 2014 until February 9, 2015—a period of 196 to again refill her migraine medication, despite the fact that not one, but two Notices were received during that period. Both prior to January 2, 2014, and after February 9, 2015, Mrs. Hunsaker refilled her migraine medication more frequently. (*See* App. 134-36.)

"upset" by the letters because "his temples [would] go in and out" and he would

"grind[] his teeth." (App. 198-99.) Beyond grinding his teeth, Mrs. Hunsaker stated

that Mr. Hunsaker was "not a happy boy." (App. 205-06.) Additionally, Mr.

Hunsaker "voiced his frustration" as a result of the letters. (App. 201.) But Mrs.

Hunsaker also testified that Mr. Hunsaker was "maintaining his cool." (App. 199.)

Despite regular doctor's visits, Mr. Hunsaker did not seek medical care as a result

of the Notices. (App. 194.)

After receiving each Notice, Mr. or Mrs. Hunsaker called their attorney,

Keith Karnes. (App. 183-84, 186, 209.) Within a day or two, Mr. Karnes would get

back to Mr. and Mrs. Hunsaker, and advise them that because there was an

automatic stay in place, the IRS could not collect. (App. 183, 209.) Both Mr. and

Mrs. Hunsaker testified that hearing back from Mr. Karnes would ameliorate their

concern. (App. 191-92, 209.)

### D. The ruling below

The Bankruptcy Court held that Mr. and Mrs. Hunsaker had established

entitlement to emotional-distress damages under *In re Dawson*, 390 F.3d 1139 (9th

Cir. 2004). It explained that, under *Dawson*, emotional-distress damages are

allowable for a violation of the automatic stay where an individual "(1) suffer[s]

significant harm, (2) clearly establish[es] the significant harm, and (3)

demonstrat[es] a causal connection between the significant harm and the violation

of the automatic stay (as distinct, for instance from the anxiety and pressures inherent in the bankruptcy process." (App.225-226, *quoting Dawson*, 390 F.3d at 1148).  Because the Ninth Circuit in *Dawson* was "concerned with limiting frivolous claims" (*id*. at 226, quoting *Dawson* 390 F.3d at 1148), the Bankruptcy Court held that "the term 'significant harm' or 'significant emotional harm' means simply that assertion of the claim is not frivolous, and that the injury is not trivial or insubstantial." (*Id*.)

Applying that standard, the Bankruptcy Court ruled that Mr. and Mrs. Hunsaker need not provide corroborating evidence because the circumstances—receipt of the four Notices—would "obviously" cause a reasonable person to suffer significant harm. (App. 256-57.) The Bankruptcy Court further held that "[t]he injuries described by the Plaintiffs at trial, particularly Mrs. Hunsaker's migraine headaches, were clearly established as neither trivial nor insubstantial." (*Id*.) However, the Bankruptcy Court did not elaborate on what injuries Mr. Hunsaker had, other than noting that the Notices exacerbated his stress. (*Id*.) The Bankruptcy Court awarded Mrs. Hunsaker emotional-distress damages in the amount of $3,000 and Mr. Hunsaker emotional-distress damages in the amount of $1,000. (App. 257, 259-60, 270-71.)

### E.  This court's ruling and the subsequent appeal

The United States appealed the Bankruptcy Court's judgment awarding Mr. and Mrs. Hunsaker emotional distress damages, arguing that *Dawson* was wrongly decided, that the Hunsakers' emotional distress was insufficient to award emotional-distress damages and that sovereign immunity bars the Hunsakers' claims altogether. ECF No. 13.This Court reversed the judgment of the Bankruptcy Court, ruling that sovereign immunity bars the Hunsakers' claims for emotional distress. ECF No. 19.

The Hunsakers appealed and the Ninth Circuit reversed, concluding that sovereign immunity does not preclude an award of emotional distress damages against the United States for willful violation of the automatic stay. ECF No. 23. Accordingly, the case was remanded to this Court with instructions to consider the government's challenge to the merits of the Hunsakers' claims for emotional-distress damages. *Id*. Pursuant to this Court's scheduling order (ECF No. 25), the United States submits this brief challenging the merits of Hunsaker's claims.

## <u>SUMMARY OF ARGUMENT ON REMAND</u>

The United Stated maintains that *In re Dawson*, 390 F.3d 1139 (9th Cir. 2004) was wrongly decided, but also recognizes that this Court is bound by the decision. Therefore the United States restates its argument that *Dawson* was

wrongly decided briefly to preserve the possibility that the United States may ask the Court of Appeals for *en banc* consideration to overrule *Dawson*.

To establish a claim for emotional-distress damages under *Dawson*, an individual "must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." 390 F.3d at 1149.

Previously, this Court noted: "Mr. Hunsaker likely never suffered an injury sufficient to support an award of emotion distress damages under § 362(k)," and that the Court was "skeptical whether Mrs. Hunsaker established the required causal connection between the notices and her migraines. ECF No. 19 at 3. However, the Court declined to rule on those issues because it held that sovereign immunity barred their claims entirely (*id*.). Turning to the merits, the Court should now overturn the Bankruptcy Court's judgment because the record establishes that Mr. and Mrs. Hunsaker failed to satisfy *Dawson*'s standard in two ways.

First, the Bankruptcy Court incorrectly held that no corroborating evidence was necessary in this case because the circumstances make it obvious that a reasonable person would suffer significant harm. This issue is important to the United States, various agencies of which are a frequent target of damages motions. This is due partly to the counter-intuitive meaning given to "willful violation" by

9

most courts, under which any "willful act" that violates the stay following notice of a bankruptcy is a willful violation, making good faith irrelevant. As a result of this almost strict-liability test, coupled with the availability of attorney's fees, stay-violation damages claims against entities with deep pockets have become a "cottage industry," as many courts have observed. The Bankruptcy Court's holding that the circumstances here—mailing four Notices and without any actual levy, collection, or extraordinary harassment such as repeated telephone calls—would "obviously" cause a reasonable person to suffer significant harm could open the United States up to an exponential number of challenges for minor stay violations. That is partly because attorney's fees are generally not available unless there is some other form of injury justifying suit in the first place and emotional distress can satisfy that requirement (at least in this circuit). As reflected by the numerous cases holding that mailing letters alone is not sufficient to abrogate the need for corroborating evidence, this was clearly not Congress's intent.

The second misapplication of *Dawson* is that the Bankruptcy Court incorrectly held that Mr. and Mrs. Hunsaker suffered significant harm. The evidence at trial established only that Mr. Hunsaker was upset, frustrated, and concerned, which cannot legally be considered *significant* harm. Moreover, Mr. Hunsaker's harm was essentially vicarious—he was upset only because his wife was upset. It is almost unheard of in the law to award damages for causing

10

emotional distress to one individual by causing emotional distress to a relative, save perhaps for the tort of intentional infliction of emotional distress. Similarly, the Court found that Mrs. Hunsaker suffered significant harm, even though the evidence at trial established that any harm suffered did not last for a significant amount of time—a necessary component of significant harm.

The Bankruptcy Court's judgment should be reversed.

## ARGUMENT

### A. *Dawson* was wrongly decided.

Under Section 362(k)(1) of the Bankruptcy Code, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). It is the position of the United States that the Ninth Circuit incorrectly interpreted the term "actual damages" to include damages for emotional distress, whether or not such damage resulted in any financial injury and/or that it incorrectly interpreted the word "injured" to include injury other than pecuniary injury (i.e., mental stress). *Compare In re Dawson*, 390 F.3d 1139, 1148 (9th Cir. 2004) *with Aiello v. Providian Financial Corp.*, 239 F.3d 876, 879 (7th Cir. 2001) (holding that the term "actual damages" does not encompass damages for emotional distress, but rather is intended to only compensate for economic loss). The United States

recognizes that this Court is bound by *Dawson* and include this argument to preserve the possibility that the United States may ask the Court of Appeals for *en banc* consideration to overrule *Dawson*.

## B. The Bankruptcy Court incorrectly held that the circumstances make it obvious that a reasonable person would suffer significant harm.

The Bankruptcy Court incorrectly held that no corroborating evidence was necessary in this case because the circumstances make it obvious that a reasonable person would suffer significant harm. To establish a claim for emotional-distress damages under *Dawson*, an individual "must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Dawson* 390 F.3d at 1149. Generally, to establish that an individual has suffered significant emotional harm, he or she may offer corroborating medical evidence or have family, friends, or coworkers "testify to manifestations of mental anguish and clearly establish that significant emotional harm occurred." *Dawson*, 390 F.3d at 1149. However, if significant emotional distress is readily apparent, corroborating evidence may not be necessary, such as where the violator engaged in egregious conduct or where the circumstances make it obvious that a reasonable person would suffer significant emotional harm. *Id*. at 1150 (citing *In re Flynn*, 185 B.R. 89 (S.D. Ga. 1995)).

Although it held that the IRS had not engaged in any egregious conduct here, the Bankruptcy Court held that no corroborating evidence was needed because:

> Plaintiffs received four notices from the Internal Revenue Service, each of which indicated that the Service intended to take steps which would, once carried out, likely defeat their efforts to reorganize their finances through Chapter 13. The notices continued notwithstanding their attorney's efforts to stop them, and *it is not unreasonable that they were concerned* that the Government might take the action threatened notwithstanding their attorney's assurances.

App. 256 (emphasis added). This passage misstates the *Dawson* standard, which requires that the circumstances make it obvious that a reasonable person would suffer *significant* emotional harm. Whether or not it was reasonable for Mr. and Mrs. Hunsaker to be "concerned," concern is not significant harm.

In *Flynn*, cited by *Dawson* as an example of when circumstances make it obvious that a reasonable person would suffer significant emotional harm, the IRS levied on a debtor's bank account, which resulted in the debtor's checking account being frozen and her having had to cancel a planned birthday party for her child. 185 B.R. at 90. The Bankruptcy Court held that medical evidence was not necessary to support a claim for emotional-distress damages because it was clear that emotional harm had been suffered due to the stay violation:

> Although Debtor apparently did not suffer any out-of-pocket medical expenses or long-term physical or emotional harm as a result of the IRS' wrongful levy, the evidence was uncontradicted that she was forced to endure the stress of knowing that a number of her checks

13

would bounce and dealing with those payees, the emotional trauma of having to cancel a planned birthday party for her child, and the humiliation of being unable, without considerable difficulty and commotion, to negotiate a check for groceries at her neighborhood supermarket.

*Matter of Flynn*, 169 B.R. 1007, 1023 (Bankr. S.D. Ga. 1994) *aff'd in part, rev'd in part sub nom. In re Flynn*, 185 B.R. 89 (S.D. Ga. 1995). But *Flynn* is easily distinguishable from the circumstances in this case as the IRS did not actually levy on Mr. and Mrs. Hunsaker's assets. In contrast to the debtor in *Flynn* whose checking account was frozen as a result of the IRS levy, Mr. and Mrs. Hunsaker had no funds or other property seized and suffered no collateral consequences that could flow from lack of access to a bank account. The United States does not dispute that the Notices likely caused Mr. and Mrs. Hunsaker "concern," as the Bankruptcy Court recognized, but the Notices did not meaningfully interfere with their normal life.

In similar circumstances—where a creditor has mailed one or more collection notices—courts have routinely held that the circumstances do not make it obvious that a reasonable person would suffer significant emotional harm. *See In re Aiello*, 231 B.R. 684, 691 (Bankr. N.D. Ill. 1999) *aff'd sub nom. Aiello v. Providian Fin. Corp.*, 257 B.R. 245 (N.D. Ill. 2000) *aff'd*, 239 F.3d 876 (7th Cir. 2001) (holding that a creditor's conduct in sending a threatening letter "was not so extreme and outrageous that this court can presume that emotional distress would

14

naturally follow"); *In re Bourke*, 543 B.R. 657, 665 (Bankr. D. Mont. 2015) (holding that "the circumstances in the instant case, where [a creditor] continued to send collection letters postpetition, by itself, do not make it obvious that a reasonable person would have suffered significant emotional harm"); *In re Van Durden*, 2015 WL 3507074, at *4 (Bankr. N.D. Cal. June 2, 2015) (finding creditor's mailing of three invoices was "likely to cause a reasonable person only fleeting annoyance, not significant emotional distress"); *In re Dayley*, 349 B.R. 825, 830 (Bankr. D. Idaho 2006) (finding that the receipt of three billing statements from a creditor "may cause some distress" it did not cause "significant emotional distress beyond becoming temporarily upset"); *In re Gorringe*, 348 B.R. 789, 792 (Bankr. D. Idaho 2006) (emotional distress was not "readily apparent to the Court" where the Creditor garnished Debtor's bank account and sent letters); *In re Bryant*, 294 B.R. 791, 800 (Bankr. S.D. Ala. 2002) (finding no basis for emotional-distress damages where the IRS sent Notices). Compare with *Lansaw v. Zokaites (In re Lansaw)*, 853 F.3d 657, 667 (3rd Cir. 2017) (stay violations were so egregious that a reasonable person could be expected to suffer some emotional harm where the offending creditor "repeatedly—at times, physically and in the presence of the children entrusted to the [debtors'] care—attempted to intimidate the [debtors]") and with *In re Bradford* (2018 WL 6422858) (it is not unreasonable to expect debtor would suffer significant emotional distress where the offending

creditor threatened to destroy debtor's personal property left in her car, stalked the

debtor to the point where she felt unsafe to travel alone, and sent the debtor and her

close family members "a number of profane, and at least one racially-charged, text

messages in which [the creditor] taunted, harassed, and berated the debtor,"

including one particularly troubling message that "could be read in modern urban

parlance to include a threat of physical violence against—and harm to—the

debtor.").

It is again useful to step outside the realm of bankruptcy stay violations and

compare when emotional-distress damages are available to persons aggrieved by

errors by creditors collecting debts. As noted above, emotional distress caused by

wrongful debt collection is generally not actionable for damages where the errors

do not reach actual collection, as opposed to mistaken demands for payment,

unless those demands meet the standards for reckless or intentional infliction of

emotional distress. *See generally* Joel E. Smith, *Recovery by Debtor, Under Tort of*

*Intentional or Reckless Infliction of Emotional Distress, for Damages Resulting*

*from Debt Collection Methods*, 87 A.L.R. 3d 201 (1978, and supplements).  *See*

*also* Restatement, Torts 2d, § 46.

Damages for emotional distress should not be available for violations of the

stay unless *either* there is actual collection activity *or* threats that rise to a level of

serious misconduct; such damages should not be available where the creditor has

merely mailed a few letters demanding payment and threatening collection if payment is not make—i.e., ordinary and rather benign debt collection efforts that likely reflect that the creditor's employees sending the particular notices were unaware of the bankruptcy stay. In this regard, while *Dawson* held that economic injury was not a prerequisite to recover damages for emotional distress, the facts in *Dawson* include far more than letter demands. The bank's violation of the stay included the commencement of an unlawful detainer action against the debtors. 390 F.3d at 1144. Moreover, while egregious conduct was also not a pre-condition to demonstrating significant (non-fleeting) emotional distress, the Ninth Circuit recognized that egregious conduct might justify a finding that emotional distress was significant without corroborating evidence. *Id.* at 1150 ("In some cases significant emotional distress may be readily apparent even without corroborative evidence. For instance, the violator may have engaged in egregious conduct."). The court gave as an example, a case where the "creditor entered the debtor's home at night, doused the lights, and pretended to hold a gun to the debtor's head." *Id.* Continuing, the Ninth Circuit added that "even if the violation of the automatic stay was not egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm," whereupon it cited the *Flynn* case where *actual collection* "forced [the debtor] to cancel her son's birthday party because her checking account had been frozen." *Id.*

17

Here, there was no collection activity in this case that had collateral consequences that would make emotional distress "obvious," as in *Flynn*. Nor was there egregious conduct anything like the example the Ninth Circuit gave for mere threats to collect without actual collection. The appropriate standard under *Dawson* is that emotional distress, without any pecuniary loss, is not actionable under § 362(k) unless *there is either* actual collection *or* the threats to collect are egregious.

This issue is important to the United States, various agencies of which are unfortunately a frequent target of damages motions. This is due partly to the counter-intuitive meaning given to "willful violation" by most courts, under which any "willful act" that violates the stay following notice of a bankruptcy is a willful violation, making good faith irrelevant. *See In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989). As a result of this almost strict-liability test, coupled with the availability of attorney's fees, and in some jurisdictions emotional-distress damages, stay-violation damages claims against entities with deep pockets have become a "cottage industry," as many courts have observed. *See, e.g.*, *In re Roman*, 283 B.R. 1, 11 (9th Cir. BAP. 2002) (quoting *In re McLaughlin*, 96 B.R. 554, 560 (Bankr. E.D. Pa.1989)); *In re Sturman*, 2011 WL 4472412 at *4 (S.D.N.Y. 2011); *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998) (quoting *In re Putnam*, 167 B.R. 737, 741 (Bankr. D.N.H.1994)); *In re Cini*, 492

18

B.R. 291, 318 (Bankr. D. Mont. 2013). Numerous other decisions express the same concern. The Bankruptcy Court's holding that mailing four Notices demanding payment but without any actual levy, collection, or extraordinary harassment such as repeated telephone calls would "obviously" cause a reasonable person to suffer significant harm could open the United States up to an exponential number of challenges for minor stay violations. As reflected by the numerous cases holding that mailing letters alone is not sufficient to abrogate the need for corroborating evidence, this was clearly not Congress's intent. As a legal matter, this Court should hold that the circumstances here are not sufficient to absolve Mr. and Mrs. Hunsaker of the requirement to present corroborating medical evidence in order to establish significant harm, because there was *neither* actual collection activity *nor* egregious conduct demanding payment.

### C. The evidence presented at trial does not support an award of damages for emotional distress.

As is explained above, debtors bore the burden clearly to prove significant harm and a causal connection between that harm and the four notices sent by the IRS. They did not carry that burden.

The Bankruptcy Court incorrectly concluded that "[t]he injuries described by the Plaintiffs at trial, particularly Mrs. Hunsaker's migraine headaches, were clearly established as neither trivial nor insubstantial, and are compensable under the *Dawson* standards." To be compensable, Mr. and Mrs. Hunsaker had the

19

burden to show that their emotional distress was more than fleeting, trivial, or

medically insignificant. *Dawson*, 390 F.3d at 1149 (citing *In re Skeen*, 248 B.R.

312, 319 (Bankr.E.D.Tenn.2000) as holding that "'[b]ecause the emotional distress

suffered ... was fleeting, inconsequential, and medically insignificant, ... it is not

compensable'") (ellipses supplied by *Dawson*)). While the Bankruptcy Court held

that Mr. and Mrs. Hunsaker's distress was not "trivial," the Bankruptcy Court

failed to address whether their distress was fleeting or medically insignificant.

Because the evidence at trial established that any emotional distress experienced by

Mr. and Mrs. Hunsaker was both fleeting and medically insignificant, this Court

should overturn the award of damages for emotional distress.

Mr. and Mrs. Hunsaker failed to prove that their emotional distress lasted for

a significant period of time. To be "significant," emotional distress must last for a

significant period of time or meaningfully interfere with the debtor's normal life.

*See e.g.*, *Dawson*, 390 F.3d at 1149 ("Fleeting or trivial anxiety or distress does not

suffice to support an award…"); *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263,

1272 (11th Cir. 2014) (holding that debtors failed to show that they suffered

significant emotional distress as opposed to fleeting or trivial anxiety or distress

where debtors failed to present evidence as to how long their emotional distress

lasted); *In re Grand*, 2009 WL 790205, at *2 (Bankr. D. Haw. Jan. 23, 2009)

(holding that the evidence did not support an award of damages although debtor's

"fear and concern were undoubtedly genuine," because debtor presented no evidence that her emotional distress lasted for a significant period of time or meaningfully interfered with her normal life.). Awarding damages despite the short duration of Mr. and Mrs. Hunsaker's emotional distress stemming from their the receipt of the Notices was legal error.

In *Dayley*, the Bankruptcy Court in Idaho faced similar circumstances: A creditor inadvertently mailed three-computer-generated billing statements to debtors during the pendency of their bankruptcy. 349 B.R. at 827. Debtors asserted that upon receipt of the billing statements, Ms. Dayley, a diabetic, exhibited signs of low blood sugar, which in turn caused Mr. Dayley considerable anxiety and distress. *Id*. at 828. However, while the billing statements caused debtors' stress, neither was required to visit a doctor. *Id*. The Court concluded that the testimony did not establish that either debtor experienced significant emotional distress beyond becoming temporarily upset, and declined to award emotional-distress damages. *Id*. at 830.

Similarly, here the evidence at trial established that while Mr. and Mrs. Hunsaker may have become temporarily upset upon receipt of the Notices, their concern was not long lasting. After receiving each Notice, they called their attorney, Keith Karnes. Within a day or two, Mr. Karnes would advise Mr. and Mrs. Hunsaker that because there was an automatic stay in place, the IRS could not

21

collect. Both Mr. and Mrs. Hunsaker testified that hearing back from Mr. Karnes would ameliorate their concern. *See Buehler v. Dodd*, 2015 WL 393477, at *3 (Bankr. D. Or. Jan. 28, 2015) (noting that debtor's fear of eviction should have stopped when her counsel advised her that eviction was unlikely). Moreover, Mrs. Hunsaker's migraines, and Mr. Hunsaker's vicarious harm from observing his wife's distress, lasted at most for a day or two. Thus, Mr. and Mrs. Hunsaker failed to establish that they experienced significant harm traceable specifically to the Notices.[3]

Additionally, the Bankruptcy Court erred in awarding damages because Mr. and Mrs. Hunsaker did not establish that any emotional distress they suffered was medically significant. In most cases, a debtor must establish that his or her emotional distress is medically significant in order to recover damages. *See Dawson*, 390 F.3d at 1149 (citing *Skeen*, 248 B.R. at 319). *See also In re Burkart d/b/a Burkart Auto.*, 2010 WL 502945, at *5 (Bankr. N.D.N.Y. Feb. 9, 2010) (citing *Grand*, 2009 WL 790205 at *5) ("In the absence of egregious conduct,

---

[3] Recall that at the same time as they received the Notices, Debtors had other long-term concerns and worries: the land dispute with the county that caused the Hunsakers to file for bankruptcy lasted for approximately four years and was not resolved until around November 2014. App. 190-91. Mr. Hunsaker described the land dispute as a "pain in the neck," "stressful," and "the main focus in [his] life." App. 66-67. Mrs. Hunsaker also found the land dispute and Plaintiffs' finances to be stressful. App. 208.

however, the Court must guard against frivolous claims by awarding emotional distress damages only where the emotional or psychological toll on the debtor is clearly proven to have been medically significant."); *In re Hutchings*, 348 B.R. 847, 912 (Bankr. N.D. Ala. 2006) ("fleeting, inconsequential, and medically insignificant annoyance, aggravation, or indignation …does not, as a matter of law, justify an award of 'actual damages'").

The evidence at trial established that despite having regular doctor's visits, neither Mr. nor Mrs. Hunsaker sought medical care for their emotional distress. *See, e.g.*, *Lodge*, 750 F.3d at 1272 (debtors could not establish a causal connection between their injuries and the stay violation where they failed to provide evidence of doctor's visits); *Van Durden*, 2015 WL 3507074 at *5 (holding that debtor did not seek any medical help as a result of the stay violations and therefore could not meet the *Dawson* standard); *Bourke*, 543 B.R. at 665 (the fact that debtor did not seek medical attention for the additional stress of stay violation was a factor in denying damages). Indeed, Mrs. Hunsaker's prescription records establish either that she had fewer migraines during the period at issue, or that she was able to stop the on-set of the migraine by taking over-the-counter medication. Either way, Mrs. Hunsaker was able to carry on with her normal life.

The only evidence of Mr. Hunsaker's harm was his and his wife's testimony that after reading the notices he ground his teeth, his temples would go in and out,

and he became upset. But being temporarily upset is not sufficient to establish significant harm. *See, e.g.*, *Bourke*, 543 B.R. at 665; *Dayley*, 349 B.R. at 830. Moreover, nothing in *Dawson* supports awarding damages for emotional distress not directly caused by the stay violation but instead indirectly caused by watching a relative suffer emotional distress. That appears to be a leap in the law that is not supported inside or outside bankruptcy cases. Indeed, for common law torts, damages for emotional distress caused by harm to a relative are usually limited to where the direct harm witnessed by the plaintiff is serious physical injury. *See, e.g.*, *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 549 (1994) (describing the circumstances under which bystanders may recover for emotional distress brought on by watching the injury or death of a third party). The Court should not allow this unprecedented extension of liability for emotional distress to distress caused by witnessing a third party's emotional distress.

Mr. and Mrs. Hunsaker failed to establish that any emotional distress they suffered was neither fleeting nor medically insignificant, and therefore, they failed to meet their burden to prove significant harm under the *Dawson* standard.


//


//

24

## **<u>CONCLUSION</u>**

This Court should reverse the judgment of the Bankruptcy Court and remand with instructions to enter judgment in favor of the United States on the merits.


Dated: March 15, 2019.

RICHARD E. ZUCKERMAN
Deputy Assistant Attorney General

*/s/ Boris Kukso*
BORIS KUKSO
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-353-1857 (v)
202-307-0054 (f)
Boris.Kukso@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Keith D. Karnes; kkarnes@keithkarnes.com

> */s/ Boris Kukso*
> BORIS KUKSO
> Trial Attorney
> United States Department of Justice, Tax Division