Case No. 6:16-cv-00386-MC

Bankr. No. 12-64782-fra13 (Bankr. D. Or.)
Adv. No. 14-06218-fra

---

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON

---

In re JONATHON ELDON HUNSAKER and
CHERYL LYNN HUNSAKER,
Debtors.

---

JONATHON ELDON HUNSAKER; CHERYL LYNN HUNSAKER

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA,

Defendant-Appellant,

---

ON APPEAL FROM THE JUDGMENT OF UNITED STATES BANKRUPTCY

COURT FOR THE DISTRICT OF OREGON

---

RESPONSE BRIEF OF APPELLEES ON REMAND

---

KEITH D. KARNES, OSB No. 033521
keith@keithkarnes.com
Karnes Law Offices, PC
2701 12th St. NE
Salem, OR 97302
Tel: 503-385-8888
Fax: (503) 385-8899
*Attorney for Appellee*

# TABLE OF CONTENTS

STATEMENT OF ISSUES ON REMAND ………........................................................... 1

STANDARD OF REVIEW …………........................................................................... 1

STATEMENT OF THE CASE ........................................................................................ 1

    A. Proceedings below ……........................................................................... 1

    B. Mr. and Mrs. Hunsaker's Emotional Distress ............................................... 3

    C. The Ruling Below .................................................................................... 4

    D. This Court's Ruling and the Subsequent Appeal ......................................... 5

SUMMARY OF ARGUMENT ON REMAND ............................................................. 5

ARGUMENT .................................................................................................................. 7

    A. Dawson is valid established precedent. ...................................................... 8

    B. The Bankruptcy Court properly held that Appellant's wilful violations would obviously cause a reasonable person to suffer significant harm. .......................... 11

    C. The evidence presented at trial is sufficient to establish an award for emotional distress damages ………….……………………………………………. 13

CONCLUSION ............................................................................................................. 15

## STATEMENT OF ISSUES ON REMAND

1. Whether the Court properly concluded that Appellant's wilful violation of the automatic stay obviously established that a reasonable person would suffer significant emotional harm, and thus, the Court's award of damages granted to the Hunsakers was proper.

2. Whether the evidence on record properly supported the emotional distress damages awarded to the Hunsakers.

## STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed *de novo*. *In re Reaves*, 285 F.3d 1152, 1155 (9th Cir. 2002). The bankruptcy court's findings of fact are reviewed for clear error. *Reaves*, 285 F.3d at 1155. The bankruptcy court's decision whether to award emotional distress damages and how much to award is reviewed for abuse of discretion. *Dawson v. Wash. Mut. Bank* (*In re Dawson*), 390 F.3d 1139, 1150 (9th Cir. 2004). "The district court's interpretation of a statute is a question of law that we review de novo." *In re Heritage Bond Litig.*, 546 F.3d 667, 675 (9th Cir. 2008) (quoting *Beeman v. TDI Managed Care Servs.*, 449 F.3d 1035, 1038 (9th Cir. 2006)).

## STATEMENT OF THE CASE

### A. Proceedings Below

On November 5, 2012, Mr. and Mrs. Hunsaker ("Appellees") filed for Chapter 13 bankruptcy relief. (App. at 3-6)[1]. On November 7, 2012, the Bankruptcy Noticing Center ("BNC") served Appellant notice of Appellees bankruptcy and Chapter 13 Plan. *Id*. After having notice, Appellant filed a proof of claim with the U.S. Bankruptcy Court for the District of

---

[1] "App." references are to the appendix filed as ECF No 13-1 through 13-3.

Oregon ("Bankruptcy Court"). *Id.* On January 24, 2013, the BNC served Appellant with a notice of Appellee's adjourned confirmation hearing. However, in August 28, 2013, the Bankruptcy Court entered an order dismissing Appellees' Chapter 13 case. *Id.*

Subsequently, on September 10, 2013, the Bankruptcy Court vacated the dismissal of the Chapter 13 case and on that same day the BNC serviced notice of Appellees' amended Chapter 13 plan upon Appellant. *Id.* After having notice, Appellant then proceeded to mail Appellees a Notice of Intent to Levy for taxes owed in 2009. *Id.* On December 2, 2013, Appellees' attorney mailed Appellant a letter advising it that Appellees had filed for bankruptcy relief and requested that Appellant stop all collection attempts. *Id.* Then, the BNC served notice of a status conference upon Appellant on January 31, 2014. *Id.*

Appellant then proceeded to send another letter to Appellees on February 10, 2014; a Notice of Levy on Social Security Benefits. *Id.* In response, Appellees' attorney sent, again, another letter to Appellant putting it on notice that Appellees' bankruptcy case was reopened and that the automatic stay was in effect. *Id.* Appellees' attorney requested that Appellant stop all collections efforts against Appellees. *Id.* Additionally, on March 26, 2014, and May 22, 2014, the BNC served notices of hearing on Appellants. *Id.* Appellant, having been served with all these notices, then decided to send another letter to Appellees. On or about September 1, 2014, Appellant mailed Appellees a Notice of intent to levy Appellees' tax refund or other property. *Id.*

Furthermore, On or about October 8, 2014, Appellant mailed Appellees a demand that they pay their 2009 income taxes. *Id.* In response, Appellees' attorney, on or about October 8, 2014, telephoned Appellants to request that it stop all collection efforts against Appellees. *Id.* Unfortunately, there was no agent to answer the call so Appellees' attorney left a voicemail requesting Appellant to stop all collection efforts for the 2009 tax year. *Id.* Instead of complying

2

with that request or calling Appellees' attorney, on or about December 4, 2014, Appellant sent Appellees a Notice to begin levying on Appellees' Social Security Benefits. *Id.*

Due to Appellant's failure to respond to Appellees' multiple notices and Appellant's failure to cease collection efforts against Appellees, Appellees had no choice but to initiate this adversary proceeding on December 5, 2014. *Id.* In Appellees' complaint, Appellees alleged that Appellant's conduct of sending multiple Notices to levy on Appellees' property was a willful violation of the automatic stay imposed by 11 U.S.C. § 362. *Id.* As a result of Appellant's willful conduct, Appellees suffered actual damages in the form of emotional distress, anger, anxiety, worry, frustration, attorney fees and costs, and other negative emotions. *Id.*

In response, Appellant moved for summary judgment alleging that sovereign immunity had not been waived for an award of punitive or emotional distress damages and that Appellees had not met their burden in showing they were entitled to emotional distress damages. (App. at 18-38). An important point to take notice of is that in its motion for summary judgment, Appellant conceded that its conduct was in fact a violation of the automatic stay. *Id.* The Bankruptcy Court, after reviewing the motions for summary judgment, held Appellant had not waived sovereign immunity in regards to punitive damages and denied Appellants summary judgment on its emotional distress damages claim. (App. at 252-58).

### B. Mr. and Mrs. Hunsaker's Emotional Distress

During the motion for summary judgment proceeding, Appellees each testified as to their own and each other's damages. (App. 169-217) Mrs. Hunsaker provided testimony related to her increase of migraines, increase of medication intake, and the days she had to miss work as a result of Appellant's conduct. *Id.* Mr. Hunsaker corroborated Mrs. Hunsaker's testimony and provided testimony related to the fact that he is diabetic and how his medication intake

also increased as a result of Appellant's conduct. *Id.* Additionally, both Mr. and Mrs. Hunsaker provided testimony related to the loss of sleep and loss of appetite they experienced as a result of Appellant's conduct. *Id.* Lastly, both Mr. and Mrs. Hunsaker provided testimony related to their upset and frustration every time they received a Notice from Appellant to attempt to collect on the debt when they should have been protected by the Bankruptcy Court's automatic stay. *Id.*

**C. The Ruling Below**

In its holding, the Bankruptcy Court established that in order to be entitled to an emotional-distress damage it would apply the *Dawson* factors: "an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between the significant harm and the violation of the automatic stay." (App. at 255-56) (citing *In re Dawson*, 390 F.3d at 1149). After applying the standard, the Bankruptcy Court determined that due to the circumstances of the case and Appellant's undisputed conduct and violations, it was obvious that Appellees suffered significant harm because a reasonable person in Appellees' shoes would also suffer significant harm given these particular circumstances. (App. at 255-57).

The Bankruptcy went further and explained that the standard above was set for the purposes of "limiting frivolous claims." *Id*. Here, the Bankruptcy Court established that "[t]he injuries described by the Plaintiffs at trial, particularly Mrs. Hunsaker's migraine headaches, were clearly established as neither trivial nor insubstantial and are compensable under the *Dawson* standards." *Id*. Although the Bankruptcy Court did not go into detail regarding Mr. Hunsaker's injuries, like it did Mrs. Hunsaker's, the Bankruptcy Court did establish that "the injuries described by the *Plaintiffs*" clearly established the need for

compensation. *Id*. (emphasis added). Thus, the Bankruptcy Court felt it was just and proper to award Mr. Hunsaker $1,000 in damages and Mrs. Hunsaker $3, 000 in damages; a total of $4,000 in damages. (App. at 258).

**D. This Court's Ruling and the Subsequent Appeal**

Following the Bankruptcy Court's judgement, Appellant appealed the emotional distress damages and argued that *Dawson* was wrongly decided. Appellant's primary argument was that Appellees emotional distress was not sufficient to be awarded damages and, additionally, Appellant argued that sovereign immunity barred the Hunsakers' claims. (App. at 150-54). This Court reversed the Bankruptcy Court's judgment ruling that sovereign immunity barred the Hunsakers' claims. ECF No. 19. The Hunsakers then appealed from this Court's reversal and the Ninth Circuit Court of Appeals reversed this Court's decision and remanded the case. ECF No. 23. The Ninth Circuit held that sovereign immunity does not preclude an award for emotional distress damages against the United States for willful violation of the automatic stay. *Id*. On remand, this Court is to consider Appellant's challenge to the merits of the Hunsakers' claims for emotional distress damages. *Id*.

**SUMMARY OF ARGUMENT ON REMAND**

In its opening brief on remand, Appellant has recognized that this Court is bound by the decision in *Dawson*. ECF No. 26 at 8. However, Appellant attempts to reargue that *Dawson* was wrongly decided and therefore Appellant asks the Court of Appeals for *en banc* consideration to overrule *Dawson*. *Id.* at 9. Appellant also attempts to argue that the *Dawson* standard was misapplied to the facts of this case by the Bankruptcy Court. *Id.* at 9-11. Appellant heavily relies on this Court's brief note, during its prior ruling, regarding whether the Hunsakers actually experienced emotional distress. ECF Doc. 19 at 3. However, this Court clearly stated that it did

5

not need to reach those issues because sovereign immunity barred the Hunsakers' claims. *Id*. Additionally, in this Court's brief note regarding emotional distress, this Court found it proper to apply the *Dawson* standard in examining the circumstances of this case. *Id*. at 2-3.

The Bankruptcy Court properly applied *Dawson* when determining Appellant's continuous and willful violations caused the Hunsakers emotional distress damages. *Dawson* provides several methods for an injured individual to establish emotional distress; one of which includes "circumstances which 'may make it obvious that a reasonable person would suffer significant emotional harm.'" (App. 255-57). Here, Appellants continuous and willful violations were more than just mailing four Notices. As the Bankruptcy Court stated, "Plaintiffs received four Notices from the Internal Revenue Service, each of which indicated that the Service intended to take steps which would, once carried out, likely defeat their efforts to reorganize their finances through Chapter 13." *Id*.

Additionally, Appellant continued to send these Notices despite Appellees' attorney's efforts to stop them. The Bankruptcy Court properly noted that is was not unreasonable for Appellees to be concerned that Appellant would "take the action threatened notwithstanding their attorney's assurance." *Id*. Due to Appellant's continuous and willful violation, Appellees were deprived of the "breathing spell" and "relief" that is granted to them in filing for bankruptcy. It is also important to note that the Court of Appeals in *Dawson* established that the requirement for emotional distress damages may be satisfied by showing "that the stay violation increased or aggravated the stress and anxiety inherent in the underlying proceedings." *Id*. The Bankruptcy Court also noted that it is not necessary that "plaintiffs provide corroborating evidence, or establish that the violation was egregious." *Id.* (citing *Dawson* at 1151).

6

As Appellant has established in its opening brief on remand, *Dawson* establishes that an individual asserting a claim for emotional-distress damages must "(1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm the violation of the automatic stay." ECF Doc. 26 at 9. Appellant attempts to argue that the injuries the Hunsakers suffered was insufficient for an emotional-distress claim. *Id.* at 12-19. During trial, the Hunsakers provided testimony related to Mrs. Hunsakers migraines and Mr. Hunsakers frustrations and loss of appetite. (App. 169-217). Additionally, both of the Hunsakers testified to their loss of sleep and constant worry that Appellant would seize their property and as a result their bankruptcy petition would be dismissed. *Id.* Appellant suggests that its wilful and constant threats were not "significant" because it did not last for a "significant" amount of time. ECF No. 26 at 20-21. However, Appellant fails to realize that significant harm can also occur in a short amount of time.

The Bankruptcy Court's judgment should be affirmed.

## ARGUMENT

**A. *Dawson* is Valid Established Precedent**

Congress enacted 11 U.S.C. § 106(a) to waive sovereign immunity for a "money recovery" under certain bankruptcy provisions, including 11 U.S.C. § 362(k), which allows an individual to recover "actual damages" for a willful violation of the automatic stay. Additionally, under section 106(a)(3) Congress made it clear to impose a limitation to "monetary recovery," punitive damages. Punitive damages are defined as "not compensation for injury," instead it is awarded to "punish reprehensible conduct and to deter its future occurrence." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). In contrast, "[d]istress is a personal injury familiar to the law" that "include[s] mental suffering or emotional anguish."

*See Carey v. Piphus,* 435 U.S. 247, 263-64, 264 n.20 (1978) (discussing the standard for awarding emotional distress damages as compensatory damages under 42 U.S.C. § 1983).

Furthermore, as Appellant has mentioned, in it's opening brief on remand, Congress enacted 11 U.S.C § 362(k)(1) so that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." In support of Congress' intent and the above established case law, *Dawson* further established that damages for emotional distress are recoverable as "actual damages" under 11 U.S.C § 362(k). *Dawson*, 390 F.3d at 1148. As such, Congress made it unambiguous in its provisions of the bankruptcy statute that even Appellant could not avoid liability under Section 362(k) and should be responsible for wilful violations of the Bankruptcy Court's automatic stay. *Dawson* is valid established precedent and does not need to be overruled.

**B. The Bankruptcy Court Properly Held That Appellant's Wilful Violations Would Obviously Cause a Reasonable Person to Suffer Significant Harm**

Appellant's primary argument that Appellees' harm should not be considered "significant' strongly relies on the presumption that if the emotional distress damages were awarded to them then "claims against entities with deep pockets" will become a "cottage industry." ECF Doc. 26 at 18. However, when *Dawson* was decided the Court of Appeals placed a limitation on frivolous claims for emotional distress:

> To be entitled to damages for emotional distress under section 362(h) [now (k)], an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between the significant harm and the violation of the automatic stay (as distinct, for instance from the anxiety and pressures inherent in the bankruptcy process).

*Dawson* at 1148.

Additionally, the Court went further to say "it must be clear that the individual suffered significant emotional harm. An individual may establish emotional distress damages "clearly" in several different ways." *Id. Dawson* also provided several methods of establishing emotional distress, one of which included circumstances that "may make it obvious that a reasonable person would suffer significant emotional harm." *Id*. at 1150 (citing United States v. Flynn (In re Flynn), 185 B.R. 89, 93 (S.D. Ga. 1995)). In *Flynn*, the court affirmed an award of emotional distress damages for $5,000 because plaintiff's uncorroborated testimony provided that she had no choice but to cancel a child's birthday party due to her bank account being frozen. The court in *Flynn* held "it is clear that [plaintiff] suffered emotional harm" from those circumstances. *Id.*

Here, Appellant argues that Appellees' harm was not "obvious" because there was no "collection activity . . . that had collateral consequences that would make emotional distress." ECF Doc. 26 at 18. However, this argument contradicts the purpose of the Code § 362(a)(1) which provides that a petition for relief operates a stay, applicable to all entities, of "the commencement or continuation, including the issuance or employment process, of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . ." 11 U.S.C. § 362(a)(1). When an individual decides to file for bankruptcy relief they do so with the expectation that the Code will stay collection efforts. Here, Appellant deprived Appellees of that protection.

Instead, Appellant sent Appellees four Notices threatening them to levy on their property, including Mr. Hunsaker's Social Security Benefits. Without Mr. Hunsaker's Social Security Benefits Appellees bankruptcy stress was exacerbated by the uncertainty of their financial situation due to potentially having their bankruptcy case dismissed. Appellants were notified

multiple times by Appellees' attorney that Appellees had filed for bankruptcy but Appellant chose to ignore those notifications. Instead, Appellant continued to send Notices to Appellees and as any reasonable person would believe, Appellees believed Appellant was going to levy on their property. A reasonable person would assume if Appellant continued it's wilful violation even after being notified by an attorney, then there was no reason why Appellant would not actually take action to levy on their property. Congress has granted Appellant the power to levy an individual's property without initiating court proceedings; this is common knowledge. Appellees' significant fear of Appellant's threats would also be applicable to any reasonable person.

Additionally, Appellant cites to numerous cases where creditors mailed collection notices and that some courts have held that those circumstances did not make it "obvious that a reasonable person would suffer significant harm." ECF Doc. 26 at 14-16. However, those circumstances differ from the circumstances here. None of those circumstances were an agency of the government like Appellant is and, although some of those circumstances did involve invoices or detailed information about the debt, none of those circumstances involved threats to actually levy on property; specifically, on a debtors Social Security Benefits which was essential to having the debtor's bankruptcy plan confirmed. Appellants argument suggests that its conduct was not "significantly harmful" simply because there are circumstances where a creditor has been more egregious in its collection efforts. Again, it is important to note that Appellant is not the "ordinary" creditor. Appellant has the power to levy on a debtor's property without having to initiate court proceedings.

Lastly, Appellant argues, without supporting case law, that the standard to be applied when determining whether a court should award damages for emotional distress is:

"[d]amages for emotional distress should not be available for violation of the stay unless *either* there is actual activity *or* threats that arise to a level of misconduct; such damages should not be available where the creditor has merely mailed a few letters demanding payment . . ." *Id*. at 17. As the Ninth Circuit has already established, the applicable standard in determining damages for emotional damages is an individual "must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between the significant harm and the violation of the automatic stay." *Dawson* at 1148.

Here, as the Bankruptcy Court correctly determined, the evidence provided by Appellees demonstrated that the "inherent" tension and stress of Appellees was exacerbated by Appellant's stay violations. (App. at 257). Mrs. Hunsaker experienced migraines, loss of sleep, loss of appetite, and called out of work due to her migraines. (App. 169-217). Mr. Hunsaker also experienced loss of sleep and loss of appetite in addition to the increase worry of his wife's and his own health. It is also clear in their testimony that these harms increased every time they received a Notice from Appellant. *Id.* Appellees met their burden of establishing "significant harm" or "significant emotional harm." Their assertions, applying a reasonable person standard, surpasses a claim that may be deemed "trivial" or "insubstantial."

**C. The Evidence Presented at Trial is Sufficient to Establish an Award for Emotional Distress Damages**

Appellant argues that in order for Appellees to be awarded damages for emotional distress they have the burden of showing "that their emotional distress was more than fleeting, trivial, or medically insignificant." ECF Doc. 26 at 20. As Appellant states in its brief, "to be 'significant,' emotional distress must last for a significant period of time *or*

meaningfully interfere with the debtor's normal life." *Id.* (emphasis added). Appellant strongly relies on the argument that the harm needs to be for a "significant" amount of time, but fails to recognize that Appellees also have the method of showing emotional distress by a "meaningful interference" with the debtor's normal life, which Appellees did at trial.

Additionally, Appellant argues that even if there was some harm to Appellees, there was no financial loss to categorize the harm as "significant." Appellant cites to the Seventh Circuit Court, in *Aiello*, which required that an individual suffer financial loss in order to claim emotional distress damages. *In re Aiello*, 239 F.3d 876, 880 (7th Cir. 2001). The Seventh Circuit in *Aiello* reasoned that because the purpose of the Bankruptcy Code is to protect financial interests, emotional distress damages could not be compensable on their own. *Id*. at 880. However, in *Dawson* the Ninth Circuit declined to follow that reasoning. The Ninth Circuit concluded "the purpose of § 362(h) [now (k)] encompasses more than protection of financial interests and because that statute does not suggest that any one form of damages is dependent on the existence of another form of damages." *Dawson* at 1149. To ensure that frivolous claims are not brought against violators of the automatic stay, the Ninth Circuit offered protection and set the *Dawson* standard.

As aforementioned, *Dawson* requires that the individual show the suffered significant harm was clear, but also established that there are several different ways that the individual could show that "clear" significant harm. Corroborating medical evidence may be offered. *See e.g.*, *In re Briggs*, 143 B.R. 438, 463 (Bankr. E.D. Mich. 1992) (requiring specific and definite evidence to establish an emotional distress claim arising from violation of the automatic stay); *Stinson,* 295 B.R. at 120 n.8 ("The majority of the courts have denied damages for emotional distress where there is no medical or other hard evidence to show

something more than a feeling or inconsequential injury." (internal quotation marks omitted)); *Diviney v. NationsBank of Tex. (In re Diviney)*, 211 B.R. 951, 967 (Bankr. N.D. Okla. 1997) (holding that, where emotional distress seemed trivial and no medical evidence corroborated the claim, damages for emotional distress were not warranted.

Although the above options include corroborating medical evidence, medical evidence is not always required. Non-experts, such as family members, friends, or coworkers, may testify to manifestations of mental anguish and clearly establish that significant emotional harm occurred. (*Dawson* at 1149) (*See, e.g., Varela v. Ocasio (In re Ocasio),* 272 B.R. 815, 821-22 (B.A.P. 1st Cir. 2002) (*per curiam*)) (holding that testimony from the debtor's wife – that he suffered from headaches, did not feel well for a week, and went to the doctor to have his nerves checked – was sufficient to support emotional distress damages of $1,000 without medical testimony). Additionally, in some cases, "significant emotional distress may be readily apparent even without corroborative evidence." *Dawson* at 1150. One example, not definitive, is that a violator may have engaged in egregious conduct. *See, e.g., Wagner v. Ivory (In re Wagner),* 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987) (awarding emotional distress damages, based on the debtor's testimony, when a creditor entered the debtor's home at night, doused the lights, and pretended to hold a gun to the debtor's head).

Furthermore, the Ninth Circuit determined that the conduct does not only have to be egregious; "the circumstances may make it obvious that reasonable person would suffer significant emotional harm." *Dawson* at 1150 (referencing, *United States v. Flynn (In re Flynn),* 185 B.R. 89, 93 (S.D. Ga. 1995) (affirming $5,000 award of emotional distress damages, with no mention of corroborating testimony, because "it is clear that appellee suffered emotional harm" when she was forced to cancel her son's birthday party because her

checking account had been frozen, even though the stay violation as brief and not egregious).
Here, the Bankruptcy Court properly concluded that Appellant's wilful conduct demonstrated "the 'inherent' tension and stress of the Plaintiffs' bankruptcy was exacerbated by the stay violation." (App. at 257)

In support of that exacerbation, Mrs. Hunsaker testified that she suffered migraines, among many of the other significant harms she suffered, that were attributable to the Notices sent from Appellant. (App. 16-217). Her husband, Mr. Hunsaker, also corroborated her testimony. *Id*. Pursuant to *Dawson*, the Hunsakers sufficiently satisfied the non-expert method of providing clear evidence of Mrs. Hunsaker's significant harm. Appellant argues that Mrs. Hunsaker's harm is not "significant" because it was not for a significant length of time, but as discussed above, the Hunsakers can also show that the significant harm "meaningfully interfere[d] with the debtor's normal life." Here, in addition to Mrs. Hunsaker's testimony that she experienced increased migraines, she also testified about how those migraines affected her normal life; she had to call out of work, she spent days in bed, she experienced loss of appetite, and her anxiety increased. *Id*. This clearly establishes a "meaningful interference" with her daily life.

In regards to Mr. Hunsaker's significant harm, Appellant argues that simply because he was worried about his wife, that was not sufficient to find he suffered "significant" harm. Additionally, Appellant argues that any harm Mr. Hunsaker may have suffered also did not meet the "significant" time length. To reiterate, Mr. Hunsaker also has the opportunity to show "significant" emotional harm by establishing that the harm done to him "meaningfully interfere[d] with [his] daily life." Just as Mrs. Hunsaker did, Mr. Hunsaker also provided testimony related to his increased blood sugar levels, loss of appetite, loss of sleep,

frustrations, and increase worry about his wife's health and his own. *Id*. To corroborate this testimony, during trial Mrs. Hunsaker also testified to Mr. Hunsaker's significant harm. *Id.* Again, satisfying the non-expert method of establishing the existence of substantial harm.

Just as in *Ocasio*, where the court held "testimony from the debtor's wife – that he suffered from headaches, did not feel well for a week, and went to the doctor to have his nerves checked – was sufficient to support emotional distress damages of $1,000 without medical testimony," here, Mrs. Hunsaker's non-expert testimony related to her husband is sufficient to award his emotional distress damages. *In re Ocasio* at 821-22. Similarly, as in *Flynn,* where the court affirmed a "$5,000 award of emotional distress damages, with no mention of corroborating testimony, because 'it is clear that appellee suffered emotional harm,'" even though the stay violation was brief and not egregious, here, Mrs. Hunsaker's emotional distress is "clear" and, additionally, she went further than the plaintiff in *Flynn* by providing corroborating testimony. *In re Flynn* at 93.

## **CONCLUSION**

Appellees respectfully request this Court to uphold the decision of the Bankruptcy Court which requires Appellant to justly pay Appellees for the emotional distress damages it caused them due to Appellant's own willful violation of the Bankruptcy Court's automatic stay.

Dated: April 05, 2019

/s/ Keith D. Karnes
Keith D. Karnes OSB # 033521
keith@keithkarnes.com
Karnes Law Offices, PC
2701 12th St. NE
Salem, OR 97302
Tel: 503-385-8888
Fax: (503) 385-8899

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Response Brief of Appellees on Remand with the Clerk of the Court using the ECF system on April 5, 2019, which will send notification of such filing to all participants in the case.

/s/ Keith D. Karnes
Keith D. Karnes
Attorney for Plaintiffs-Appellees Jonathon and Cheryl Hunsaker